**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **JEFFERY LEE,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 10-0587-WS-M** |
| | ) |
| **KIM THOMAS, Commissioner,** | ) |
| **Alabama Department of Corrections,** | ) |
| | ) |
| **Respondent.** | ) |

**ORDER**

This death penalty habeas action comes before the Court on petitioner's Motion to Reconsider, Alter or Amend the Court's Judgment and Grant an Evidentiary Hearing (doc. 28). The Court's 124-page Order (doc. 26) entered on May 30, 2012 comprehensively sets forth the undersigned's reasoning and conclusions on each of petitioner's myriad habeas claims. Moreover, the Court is firmly convinced that petitioner has not satisfied the Rule 59(e) standard for reconsideration, as the vast majority of his arguments either rehash what he has already said or otherwise do not meet the "manifest error" threshold for relief. Nonetheless, the undersigned writes to the Motion in the interest of identifying certain distortions of the May 30 Order, pointing out petitioner's misapplications of the law, and clarifying the May 30 Order insofar as such clarification may be beneficial in subsequent proceedings.

**I.      Background.**

Petitioner, Jeffery Lee, was convicted and sentenced to death in the Circuit Court of Dallas County, Alabama, for the December 1998 murders of Jimmy Ellis and Elaine Thompson during a botched robbery of a pawnshop near Orrville, Alabama. The Alabama state courts devoted extensive efforts to hearing and adjudicating Lee's direct appeal (all 30+ grounds of which were denied by the Alabama Court of Criminal Appeals in June 2003) and his Rule 32 petition (as to which all 35+ assignments of error were rejected by the trial judge in a 138-page opinion in August 2007 and by the Alabama Court of Criminal Appeals in an extensive opinion dated October 2009).

On October 21, 2010, Lee timely filed in this District Court a lengthy § 2254 Petition for Writ of Habeas Corpus by Person in State Custody under Death Sentence, in which he asserted 12 grounds for federal habeas corpus relief, plus dozens of embedded sub-grounds and sub-issues.  The ensuing months brought extensive briefing on these issues, including the 134-page Petition and incorporated memorandum of law, respondent's 120-page Answer and incorporated memorandum of law, and petitioner's 133-page Reply.  After careful review of all of these materials, as well as the 22-volume state-court record, the undersigned entered a 124-page Order (doc. 26) on May 30, 2012, denying the § 2254 Petition in its entirety.  The May 30 Order granted Lee a Certificate of Appealability ("COA") on the following issues, but no others: (i) whether the State utilized peremptory challenges in a manner that violated *Batson v. Kentucky*; (ii) whether petitioner received ineffective assistance of counsel with respect to mitigation evidence; and (iii) whether the sentence violated *Ring v. Arizona*.  As to all other claims, grounds, and issues presented in the Petition, the Court denied a COA because Lee failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Rather than proceeding with his appeal on the issues as to which a COA was granted (and petitioning the Eleventh Circuit for a COA as to any other issues he wished to pursue), Lee instead elected to seek reconsideration by this Court of many aspects of the May 30 Order, including issues as to which a COA was granted.  Specifically, on June 27, 2012 (the 28th calendar day after entry of the May 30 Order), Lee filed a 46-page Motion to Reconsider under Rule 59(e), Fed.R.Civ.P.  That Motion calls for reexamination by this Court of the following enumerated issues: (i) whether Lee was entitled to relief on his *Batson* claim; (ii) whether Lee was entitled to relief on his penalty-phase ineffective assistance claim; (iii) whether the Court erred in not rejecting the state courts' view of the legal significance for prejudice purposes of the jury's recommendation of life; (iv) whether the Court erred in finding that Lee was not prejudiced by his counsel's failure to consult with him before conceding to the jury that Lee had committed murder; (v) whether the Court erred in finding that Lee was not prejudiced by his counsel's failure to advise him of his right to testify; and (vi) whether Lee was entitled to relief on his Confrontation Clause claim.

## II.     Legal Standard for Motions to Reconsider.

In his zeal to criticize the May 30 Order, Lee devotes only scant attention to the propriety of litigating (and, mostly, relitigating) such issues in federal district court pursuant to a motion to reconsider.

In order for a Rule 59(e) motion to be granted, a party must identify "newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal quotation marks omitted); *see also United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) ("The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest error of law or fact.") (citation and internal marks omitted).  Lee pays lip service (but no more) to that stringent legal standard by framing his arguments in terms of purported "manifest error" by this Court.  By simply invoking the talismanic phrase "manifest error" whenever he disagrees with the May 30 Order's reasoning or conclusions, Lee apparently believes that he is entitled to demand reconsideration of anything and everything under Rule 59(e).  Petitioner is mistaken.

"In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1246 (S.D. Ala. 2008) (citations omitted).[1]  The Supreme Court has confirmed that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation omitted); *see also Arthur*, 500 F.3d at 1343 (Rule 59(e) motions cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to entry of judgment") (citation omitted).  Motions to reconsider are not a vehicle for affording a litigant "two bites at the apple." *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985).  Nor are motions to reconsider properly filed as a kneejerk reaction by a

---

[1]     The extremely limited nature of the Rule 59(e) remedy cannot be overstated.  To prevail on a motion to reconsider, "[t]he losing party must do more than show that a grant of the motion might have been warranted; he must demonstrate a justification for relief so compelling that the court was required to grant the motion." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012) (citations and internal marks omitted).

dissatisfied federal court loser.[2]  They are neither appeal substitutes nor a "dry run" to test arguments in anticipation of a forthcoming appeal.  *See generally Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) ("the well-recognized rule … precludes the use of a Rule 60(b) motion as a substitute for a proper and timely appeal") (citation omitted); *In re Hollowell*, 242 B.R. 541, 542-43 (Bankr. N.D. Ga. 1999) ("Motions for reconsideration should not be used … as a substitute for appeal.").  And of course, motions to reconsider (like all other pleadings filed in federal court) must not be filed for purposes of delay or foot-dragging to prevent judicial proceedings from moving forward to a prompt, efficient resolution.  *See generally* Rule 11(b)(1), Fed.R.Civ.P. (by filing a motion, filer certifies that it is not being presented for an improper purpose, such as causing unnecessary delay).

Notwithstanding petitioner's failure to recognize or conform his Motion to the foregoing principles, they nonetheless govern the analysis herein.

**III.   Petitioner's Specific Claims.**

   **A.     *Assignments of Error Pertaining to* Batson *Challenge*.**

The May 30 Order devoted nearly 20 pages of analysis to Lee's claim under *Batson v. Kentucky*, which centered on the State's utilization of its peremptory strikes to remove African-Americans from the venire.  As to this claim, the May 30 Order found that several of Lee's arguments were unexhausted (including his assertions that the prosecutor conceded a racial motivation for the strikes, that the trial court improperly considered the make-up of the jury, and that prosecutor Edgar Greene had a history of exercising strikes in a racially discriminatory manner), and were unavailing even if considered on the merits.  The May 30 Order also concluded that the Alabama Court of Criminal Appeals had unreasonably applied clearly

---

[2]      *See, e.g., Garrett v. Stanton*, 2010 WL 320492, *2 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license to move for reconsideration … as a matter of course, and to utilize that motion as a platform to criticize the judge's reasoning, to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome.  This is improper."); *Hughes v. Stryker Sales Corp.*, 2010 WL 2608957, *2 (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court got it wrong"); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) (motions to reconsider "do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted").

established federal law by failing to consider the totality of the circumstances in its *Batson* analysis. Upon *de novo* consideration, however, the May 30 Order concluded that petitioner had failed to meet his burden of proving purposeful discrimination, and that the *Batson* claim was therefore due to be denied. In his Motion to Reconsider, petitioner insists that the Court's analysis of the *Batson* issue suffered from "manifest error" in five respects.

First, Lee maintains that this Court failed to consider the totality of the circumstances in its *Batson* analysis. (Doc. 28, at 3 ("[A]ll of these facts must be considered together. The Court has not done this.").) This objection is counterfactual. Indeed, the May 30 Order took pains to emphasize that the totality of the circumstances must be considered in examining a *Batson* challenge, and invoked that principle as the very basis for the Court's conclusion that the state court had unreasonably applied clearly established federal law as to this claim. (Doc. 26, at 10, 22, 25.) At the end of its lengthy *Batson* discussion, working through each and every one of the facts and circumstances cited by Lee, the May 30 Order concluded as follows: "Even after considering the totality of the facts and circumstances, including all of the facts and arguments presented in the § 2254 Petition, and in a cumulative manner, the Court is of the opinion that there was no *Batson* violation here by the State." (Doc. 26, at 26-27.) The Court said it considered the totality of the facts and circumstances because the Court actually did so. Petitioner's argument to the contrary is nestled somewhere between frivolity and bad faith.[3]

Second, Lee takes issue with the May 30 Order's treatment of Lee's argument that the prosecutor "revealed a racial motive for his strikes" before the trial court. The May 30 Order

---

[3]     In saying that that it considered attendant facts and circumstances, the Court did so based on record facts as documented in the May 30 Order, not the many stilted, exaggerated, or otherwise unsupported characterizations of the record listed in the Motion to Reconsider. A habeas court does not err by declining to indulge a petitioner's mischaracterization as to the contents of the record. Besides, the May 30 Order recited critical facts and circumstances that Lee ignores, including, *inter alia*, the following: "(i) the State had articulated valid, race-neutral reasons for each of those strikes; (ii) Lee did not show that a single white veniremember left on the jury was similarly situated to a black counterpart whom the State struck; and (iii) the venire panel itself was predominantly African-American when the parties commenced their peremptory strikes, such that at any given time when the prosecution exercised a peremptory strike approximately 2/3 of the venire was African-American." (Doc. 26, at 25.) Also, Lee buries in a footnote a charge that the May 30 Order improperly deferred to state court findings in its *de novo* review of the *Batson* issue. (Doc. 28, at 5 n.7.) This argument misreads the relevant portion of the May 30 Order (doc. 26, at 23-27).

found that this argument was not properly raised in Lee's § 2254 Petition because he never told the state courts that he sought *Batson* relief on that basis.  (Doc. 26, at 13-14 & n.18.)  Petitioner now says that this exhaustion finding was manifest error because he "cited to the portions of the transcript" at issue and "the entire record of the voir dire proceeding is less than 200 pages." (Doc. 28, at 4 n.6.)  The point remains that petitioner <u>never</u> argued to the state courts that the facially neutral remark on which he now relies in these § 2254 proceedings was an admission of a racially discriminatory motivation by the State.  Petitioner's theory – that the state courts should have combed the record for him, read his mind that he ascribed great significance to a facially innocuous remark, and *sua sponte* formulated a strained construction of the record on his behalf without him saying a word – is antithetical to bedrock notions of exhaustion.  *See, e.g., Williams v. Allen*, 542 F.3d 1326, 1345 (11th Cir. 2008) (to satisfy exhaustion requirement, "we do require that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's … specific factual foundation.") (citation omitted).  Inasmuch as Lee's *Batson* argument that the prosecutor had admitted racial bias was never fairly presented to the state courts, this Court's determination of lack of exhaustion was not manifestly erroneous.[4]

---

[4]     Even if it were appropriate to consider the merits of this unexhausted argument, the Court finds no manifest error in the May 30 Order's discussion of this point.  That Order opined that the challenged statement by the prosecutor (to-wit, that "the defense, most of its strikes, were striking White jurors") cannot reasonably be interpreted as an admission of a racial motivation.  (Doc. 26, at 15.)  Petitioner now accuses the Court of "judicial speculation," and insists that he is entitled to an evidentiary hearing to prove that the statement means what he says.  (Doc. 28, at 4-6.)  It is not judicial speculation for a court to examine whether a cited passage of the record reasonably supports a habeas petitioner's claim that it is an admission of purposeful race discrimination.  It is not judicial speculation for a habeas court to give short shrift to a habeas petitioner's unreasonable reading of the record to put unspoken words in the prosecutor's mouth.  And a petitioner cannot be rewarded for attempting to twist the words and rationale of the May 30 Order into an allegation that the Court imagined the prosecutor to be telling a "joke."  (Doc. 28, at 5.)  As for an evidentiary hearing, a habeas petitioner does not get a hearing by conjuring up a far-fetched, speculative reading of the record that is not supported by the plain text of that record.  *See generally Allen v. Secretary, Florida Dep't of Corrections*, 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing … if the record refutes the applicant's factual allegations or otherwise precludes habeas relief.") (citation omitted).  Here, the record refutes Lee's factual allegation that the prosecutor admitted to having a racial motivation to the use of peremptory strikes; therefore, it was not manifest error to deny a hearing.

Third, Lee ascribes manifest error to the May 30 Order's treatment of his argument that he is entitled to *Batson* relief because the trial judge "impermissibly considered the racial make-up of the jury seated." (Doc. 1, Ground I, ¶ 8.) Notwithstanding petitioner's disagreement, the May 30 Order correctly deemed the "racial make-up" argument to be unexhausted because Lee never presented it to the state courts. Specifically, petitioner never maintained to the state courts that he believed the trial judge's observation concerning the final jury composition was proof of *Batson* error. In light of that omission, he cannot make that argument for the first time in a § 2254 Petition, and it was not manifest error for the May 30 Order so to conclude. *See, e.g., Williams*, 542 F.3d at 1345.[5]

---

[5]     The same conclusion attaches even if the merits of this argument were to be considered. In his Motion to Reconsider, petitioner relies on the well-worn proposition that "[t]he striking of even one juror on the basis of race is constitutionally impermissible." (Doc. 28, at 6.) Both this Court and the state courts were quite familiar with that legal principle. But that principle is beside the point for this particular argument, which is whether it was *per se Batson* error for the trial court to acknowledge the final composition of the jury. It was not. As the May 30 Order explains, courts routinely make similar observations in evaluating *Batson* claims. *See, e.g., United States v. Gamory*, 635 F.3d 480, 498 (11th Cir. 2011) (pointing out that "there were three African-Americans seated on the jury" in rejecting *Batson* challenge); *United States v. Edouard*, 485 F.3d 1324, 1343 (11th Cir. 2007) (in denying *Batson* claim, noting that "at least three black jurors served unchallenged on the sworn panel"); *United States v. Puentes*, 50 F.3d 1567, 1578 (11th Cir. 1995) ("Although the presence of African-American jurors does not dispose of an allegation of race-based peremptory challenges, it is a significant factor tending to prove the paucity of the claim."). The May 30 Order's reference to these authorities was confined to that narrow proposition. (Doc. 26, at 16 n.20.) Petitioner is quick to dismiss this binding Eleventh Circuit precedent as "contrary to clearly established federal law." (Doc. 28, at 6.) But these cases do not say that prosecutors are free to discriminate against some venire members as long as they balance it out with others. What they do say (and the proposition for which the May 30 Order cited them) is that the final composition of the jury is a data point that may be properly taken into account by a court evaluating a *Batson* challenge in assessing whether there was a racially discriminatory purpose as to any strikes. In other words, it is appropriate to look at the final composition of a jury in trying to determine whether the prosecutor had a discriminatory purpose at all (*i.e.*, if the final jury is racially balanced, that fact tends to suggest that the prosecutor lacked racial bias in exercising strikes because those strikes did not skew the final racial balance). For this reason, it was not manifestly erroneous for the May 30 Order to reject Lee's assertion that it was improper for the state court to comment on that fact. Nor was it manifestly erroneous for the May 30 Order to decline petitioner's invitation to impute sentiments to the trial court that the trial court never expressed, or to contort its words unreasonably to advance Lee's § 2254 Petition. (*See* doc. 26, at 15-16 & n.20.)

-7-

Fourth, Lee says that the May 30 Order "misconstrues the record" (doc. 28, at 7) in deeming unexhausted his habeas argument that Edgar Greene (the prosecutor who exercised the peremptory strikes in this case) had a history of racial discrimination in jury selection.  To support that contention, petitioner says that "on appeal the state was provided citations to numerous additional cases."  (Doc. 28, at 7.)  The misunderstanding lies with petitioner. Nowhere in the cited portion of his state-court appellate brief did Lee argue that his "history of bias" claim was focused on prosecutor Greene, specifically, as opposed to the District Attorney's Office, generally.  To the contrary, Lee's brief on direct appeal couched his position as being that "appellate courts have on several occasions reversed convictions in this District Attorney's judicial circuit due to his over discrimination against black prospective jurors."  (Vol. 7, R-41 at 32.)  So the May 30 Order's determination that Lee's efforts to reframe his argument as being directed at Greene specifically, rather than the entire District Attorney's Office, failed for want of exhaustion is neither undermined by this citation nor manifestly erroneous.  The same goes for Lee's criticism that "[t]he Court also is wrong in concluding that the history of racial discrimination by the District Attorney was a decade old and thus stale."  (Doc. 28, at 8.)  In his habeas petition, Lee cited this Court to three cases (*McGhee*, *Stephens*, and *Clark*) – and only three cases – in which he said that Greene had violated *Batson*.  (Doc. 1, Ground I, ¶ 19.)  The trials in all three of those cases dated back to the 1986-1988 period, more than a decade before Lee's trial; therefore, it was not manifestly erroneous for the Court to find them of limited probative value in assessing whether Greene was racially biased in exercising peremptory strikes at Lee's jury selection in April 2000.[6]

---

[6]        A trio of sub-arguments by Lee on this point are similarly misguided.  He faults the May 30 Order for only selecting *McGhee*, *Stephens* and *Clark* out of "the numerous cases cited by Mr. Lee in his Reply."  (Doc. 28, at 8.)  But the only other cases identified in Lee's reply that he linked to Greene were *Marks v. State*, 581 So.2d 1182, 1186-87 (Ala. Crim. App. 1990) and *Ex parte Duncan*, 638 So.2d 1332 (Ala. 1994).  (Doc. 25, at 27.)  The *Marks* trial dates back to the 1980s, so it simply reinforces the May 30 Order's point as to the helpfulness of petitioner's attempts to tar Greene as a prosecutor who chronically struck juries in a racially biased manner.  (Besides, the *Marks* appellate court made no finding of a *Batson* violation and noted the trial court's finding "that all but one of the potential jurors were struck for sufficient cause."  *Marks*, 581 So.2d at 1187.)  *Duncan* apparently went to trial in 1988, and has no indication that Greene was involved in jury selection.  So even if the Court were to consider the other cases cited by Lee in his habeas reply brief concerning Greene's record of race discrimination, the May 30 Order's conclusion would remain unchanged.  Next, in his Motion to Reconsider, petitioner points to (Continued)

Fifth, Lee takes issue with the May 30 Order's comparative analysis of particular venire members as to whom the State did or did not exercise peremptory strikes.[7]  He contends that

---

*Lucy v. State*, 785 So.2d 1174 (Ala.Crim.App. 2000), which he now links to Greene for the first time using newspaper evidence that was previously available to him.  (In his previous habeas citations to *Lucy*, Lee never indicated that there was any connection to Greene.)  A motion to reconsider is not a proper forum for a litigant to present new, previously available evidence and argument, yet this is precisely what Lee has attempted to do with respect to *Lucy*.  (Doc. 28, at 8 & notes 10-11.)  Petitioner cannot use a Rule 59(e) motion to ascribe analytical significance to *Lucy* for the very first time.  Lee also seeks to gain Rule 59(e) mileage from Judge Granade's ruling last fall in *Stephens v. Haley*, 823 F. Supp.2d 1254 (S.D. Ala. 2011), as "new factual evidence supporting Mr. Lee's *Batson* claim."  (Doc. 28, at 7.)  The Court disagrees.  In the first place, the *Stephens* decision was available to Lee for nearly eight months before the May 30 Order issued.  Had petitioner wished to present it to this Court as showing "new factual evidence," it was incumbent on him to do so then, without waiting for a motion to reconsider.  In the second place, the May 30 Order acknowledged that "Greene proffered the State's reasons for exercising peremptory challenges in the 1987 trial of Victor Stephens, where a *Batson* violation was found."  (Doc. 26, at 16.)  The *Stephens* trial predated Lee's trial by some 13 years, and is therefore not particularly helpful or illuminating in addressing the question of whether Greene had a pattern of exercising peremptory strikes in a racially biased manner in April 2000, when Lee went to trial.  The May 30 Order's conclusion to that effect was not manifestly erroneous.  Petitioner's suggestion that *Stephens* involved behavior by Greene that was identical to that in this case is factually unsupported by the record.  Finally, to this day, the only temporally proximate case that Lee has identified in support of his "history of discrimination" argument is *Lucy*, in which the Alabama Court of Criminal Appeals found not a widespread practice of racially biased peremptory strikes by the District Attorney's Office, but a single instance in which the D.A.'s Office's stated reasons for striking a single juror were not supported by the record.  *See Lucy*, 785 So.2d at 1178.  *Lucy* hardly suggests that the District Attorney's Office at that time was wallowing in an epidemic of *Batson* violations.  All other cases cited in paragraphs 18 and 19 of Count I of his § 2254 Petition and on pages 26 and 27 of his habeas reply brief relate to trials that appear temporally remote from the *Lee* trial*, thereby undercutting the notion that there was a culture at the District Attorney's Office generally that was suffused with bias against African-Americans during jury selection at the relevant time.

[7]     Antecedent to doing so, petitioner asserts that the May 30 Order "ignores" important facts concerning the State's furnishing of criminal history records to the defense.  (Doc. 28, at 9 n.12.)  This argument is not correct.  In his § 2254 Petition, Lee complained that several of the State's strikes were based on venire members' criminal histories, when "there is no evidence of these criminal histories in the record."  (Doc. 1, Ground I, ¶ 14.)  The May 30 Order rejected that argument because the record establishes (and the state appellate court found) that (i) the State had criminal history records for venire members, (ii) the State furnished such records to defense counsel before a single strike took place, and (iii) the trial court assured defense counsel that he would be allowed time to review said documentation.  (Doc. 28, at 20.)  Thus, both sides had in their possession the criminal history records that the State used as the basis of those (Continued)

white venire member M.P. (whom the State did not strike) was "exactly similarly situated" to black venire members whom the State did strike. (Doc. 28, at 10.)  But he doesn't specify which black venire members he is using as comparators.[8]  More importantly, Lee overlooks the inconvenient fact that the record shows that M.P. never voiced opposition to the death penalty at all, and did not raise her hand when the question was asked.[9]  In that regard, it bears emphasis that the other black venire members identified by Lee in Paragraph 12 of Ground I of his § 2254 Petition as comparators to M.P. raised their hands when asked if they were "generally opposed to the death penalty."  (Vol. 2, R-5 at 127-28.)  When asked a variant of the same question, M.P. did not raise her hand, and did not respond affirmatively when asked if she was opposed to the death penalty.  (Vol. 2, R-5 at 100-02.)  Thus, M.P. was not similarly situated to the black venire persons to whom Lee compares her, and the May 30 Order was not manifestly erroneous in so concluding.  It should go without saying that Lee cannot rewrite the state-court record to invent statements that M.P. never made simply because the State mistakenly sought to strike her for

---

strikes when they occurred, such that defense counsel could verify the veracity of the explanation given by the State for each such witness.  Plainly, then, defense counsel had a fair opportunity to use those records during the striking process (as a check on the propriety of the State's stated reasons for peremptory strikes), and petitioner's objection that such information was not disclosed "until it was impossible for the defense to use the information" (doc. 1, Ground I, ¶ 14) is inaccurate, as the May 30 Order found.  To the extent that petitioner dubs that conclusion manifestly erroneous in his Rule 59(e) Motion, the Court cannot agree.

[8]      Presumably, he means D.G. and J.M., whom Lee framed as similarly situated to M.P. for *Batson* purposes both on direct appeal and in his § 2254 Petition.  As the May 30 Order showed, however, they were not similarly situated.  J.M. had opined that the "death penalty wouldn't do any good" because of the risk of putting innocent people to death, which is a far cry from M.P., who expressed no such reservations.  And D.G. was struck for the additional race-neutral reason that a family member had been convicted of a property crime.  (Doc. 26, at 11.)

[9]      In his Rule 59(e) Motion, Lee suggests that it was manifest error for this Court to consider opposition to the death penalty as a race-neutral basis for the State's exercise of peremptory strikes because this "topic alone is racially infused."  (Doc. 28, at 3 & n.4.)  Such an argument is demonstrably devoid of legal merit.  *See Lucas v. Secretary, Dep't of Corrections*, 682 F.3d 1342, 1358 (11th Cir. 2012) (reaffirming prior panel's determination "that there is no clearly established Supreme Court law prohibiting the State from using peremptory challenges to remove jurors with reservations about the death penalty," given that "the Supreme Court itself has recognized that it has adopted no such bar for peremptory challenges").

-10-

cause based on an incorrect notation that she opposed the death penalty.  Again, the record is clear that she asserted no such opposition, that the State's notes (on which they relied in moving to strike her for cause) were incorrect, and that the trial judge corrected the State's misunderstanding on that point before any peremptory strikes were used.  Yet Lee is attempting to concoct error from thin air, resting a *Batson* claim on an imaginary anti-death penalty stance that M.P. never voiced.  (Doc. 28, at 9 ("The issue is that [M.P.] voiced such opposition to the death penalty during voir dire that the District Attorney thought he had grounds to strike her for cause.").)[10]

---

[10]      Petitioner also attempts to derive manifest error from the May 30 Order's discussion of venire members M.S., E.E., and K.S.  As the May 30 Order explained, white venire member M.S. (who was not struck) was not similarly situated to black venire member J.M. (who was struck) because they responded differently when asked about their views on the death penalty, with J.M. notably expressing disfavor for the death penalty "because people were innocent."  (Vol. 2, R-5 at 116-17.)  M.S. said nothing of the sort.  Petitioner cannot erase that glaring dissimilarity by selectively highlighting other aspects of J.M.'s voir dire to the exclusion of the very passage that formed the basis for the strike.  As for white venire member E.E., the May 30 Order correctly observed that the State could not have struck E.E. in lieu of black venire member D.G. (against whom it exercised a peremptory strike) because E.E. had already been struck by the defense before the State struck D.G.  (Doc. 26, at 18-19 n.23.)  In his Rule 59(e) Motion, Lee argues that this conclusion was manifestly erroneous because the State had opportunities to strike E.E. earlier, but did not.  (Doc. 28, at 10 n.13.)  This logic is impenetrable.  Surely petitioner does not mean to contend that the State discriminated against D.G. on the basis of race by exercising peremptory strikes in which it struck neither D.G. nor the alleged comparator E.E.  In any event, the Court is aware of no authority – and petitioner has cited none – holding that a *Batson* violation occurs if prosecutors do not strike a comparable white venire member at the very earliest opportunity for a reason that prompts them to strike a similarly situated black venire member many rounds later, long after the white venire member is gone.  Manifest error this is not.  Finally, Lee criticizes the May 30 Order for downplaying his concerns over black venire person K.S., who actually served as a juror.  (Doc. 26, at 21 n.27.)  Petitioner faults the State for striking K.S. despite his affirmative response in voir dire that the death penalty is a proper punishment.  But petitioner mixes apples and oranges here.  The record is crystal clear that the State did not attempt to strike K.S. for opposing the death penalty, but rather because of his perceived conflict with the State in light of his impending child support hearing at which the D.A.'s office was believed to be adverse.  (Vol. 3, R-5 at 190-91.)  It is disingenuous for petitioner to ascribe manifest error to the May 30 Order's treatment of K.S. on the theory that the State struck K.S. despite his voir dire answers that the death penalty is a proper punishment, when (a) the State's attempted strike of K.S. was for a stated reason completely unrelated to his views on the death penalty, the validity of which reason petitioner does not challenge in his Rule 59(e) Motion; and (b) K.S. served on the jury, at any rate.

For all of the foregoing reasons, petitioner's Motion to Reconsider is **denied** insofar as it relates to alleged manifest error in this Court's treatment of the *Batson* claim.  The Court understands that petitioner disagrees with the May 30 ruling on this point, and has previously granted petitioner a COA to pursue this very issue on appeal.  But none of his myriad criticisms and dissatisfactions with the May 30 Order's *Batson* ruling come close to the "manifest error" threshold necessary to entitle him to Rule 59(e) relief.

### B.     Assignments of Error Pertaining to Penalty-Phase Ineffective Assistance Claim.

As his second category of objections to the May 30 Order, Lee targets the Court's rejection of the claim in his § 2254 Petition that trial counsel was constitutionally ineffective under *Strickland v. Washington* for failing to present certain mitigating evidence during the penalty phase.  Upon careful review of the relevant portion of the May 30 Order, as well as petitioner's objections to same, the Court is of the opinion that there is no "manifest error" therein that might warrant Rule 59(e) relief on this ground.

Petitioner leads with a curious criticism.  Citing page 61 of the May 30 Order, he writes: "Relying on *Frazier* and *Borden*, the Court opined that the merits of Mr. Lee's penalty-phase ineffective assistance claim was insufficiently specific."  (Doc. 28, at 12 (footnotes omitted).) But page 61 of the May 30 Order merely relied on *Frazier* and *Borden* to reject the State's invocation of the "independent and adequate state ground" doctrine as a procedural bar to this claim, a conclusion that obviously favors Lee.  So it is unclear what "manifest analytical error" petitioner ascribes to page 61 of the May 30 Order.  Then petitioner goes on to insist that "[n]either *Frazier* nor *Borden* dictates the outcome in Mr. Lee's case."  (Doc. 28, at 12.)  But this section of petitioner's Rule 59(e) Motion cites *Frazier* and *Borden* repeatedly as the guiding precedents for the analysis that petitioner says should have been done, and that the May 30 Order did.  Given this inartfully stated objection, it is not clear what petitioner maintains the "manifest error" was in this regard.[11]

---

[11]     In a similar vein is petitioner's characterization of the May 30 Order as being predicated on "uncritical adoption of the state court's assessment about the specificity of the prejudice element of the claim."  (Doc. 28, at 14.)  The May 30 Order documents this Court's extensive, independent analysis of plaintiff's allegations concerning the types of mitigating evidence he says his trial counsel should have presented at the penalty phase, and sets forth on a category-by-category basis this Court's reasons for concluding that such mitigation evidence was weak, cumulative, nonexistent, or conflicting with a valid trial strategy employed by petitioner's (Continued)

Next, Lee claims that the Court "improperly evaluated the claim in a piecemeal fashion" (doc 28, at 12), when in fact the May 30 Order bookended its discussion of the particular facts and circumstances alleged by Lee with statements that the totality of the mitigating evidence is what mattered.  (Doc. 26, at 62, 67.)  Just because a court analyzes evidence on an item-by-item basis does not mean that it is dishonest when it opines that weighing such evidence as a whole does not change the result, or that the court simply failed to perform such a cumulative weighing.

Petitioner also quarrels with this Court's discussion of specific forms of mitigating evidence that he says his lawyer was ineffective for not presenting.  Regarding poverty, petitioner claims that this Court made a "find[ing] that his family probably was not poor."  (Doc. 28, at 15.)  This is a gross distortion of the May 30 Order.  The Order simply pointed out the weakness of Lee's poverty allegations, which were either too general (a blanket allegation that the "family environment" was "quite poor," without quantification or specifics tied to the relevant time period), or couched in specifics relating to the present day (which is irrelevant), or suggestive of no poverty (an allegation that petitioner's father was employed by the state highway department).  The May 30 Order plainly made no "findings" as to whether Lee's family was or was not poor; rather, the Court simply determined (accepting Lee's factual allegations as presented) that they did not render it unreasonable of the state appellate courts "to credit the trial court's assessment that the poverty evidence in question would not have altered the balance of aggravator and mitigators here for *Strickland* prejudice purposes."  (Doc. 26, at 64.)  Nothing about that approach or conclusion was manifestly erroneous.

As to substance abuse, Lee states that the May 30 Order concluded that substance abuse is not a mitigating factor.  (Doc. 28, at 16 n.20.)  Not true.  What the May 30 Order actually determined was that, since the jury and trial court had already heard substantial evidence of Lee's substance abuse, "[i]t was not unreasonable for the Alabama Court of Criminal Appeals to find that Lee was not prejudiced by his counsel's failure to develop such facts further during the penalty and sentencing proceedings."  (Doc. 26, at 64.)  The May 30 Order also pointed out that such evidence may or may not have been helpful to Lee, even if it were not cumulative, and cited

---

counsel.  Thus, petitioner's apparent view that this Court flippantly rubberstamped the state court's determination is irreconcilable with the facts.

authorities recognizing the double-edged nature of such evidence.  (*Id.* at 65 n.81.)[12]  This is very different from petitioner's characterization of the May 30 Order as featuring a "conclusion" that substance abuse evidence is not mitigating, as a matter of law.

As to mental impairment, the state courts found that Lee had inadequately pleaded this ineffective-assistance claim by failing to make any showing that, upon investigation, trial counsel would have discovered evidence that Lee suffered from a mental illness or could have retained mental-health professionals to testify favorably for him at the penalty phase.  The May 30 Order examined Lee's allegations through the *Strickland* lens, and found them inadequate (i) to satisfy the prejudice prong because petitioner had never alleged that "any physician, mental health professional or other expert has ever concluded that Lee actually did sustain a brain injury in the car accident, or that he suffered from any mental illness at the time of the offense;" and (ii) to satisfy the deficient performance prong because expert testimony presented by both sides at trial was that "Lee was neither psychotic nor suffering from any mental disease (other than Dr. Blanton's opinion of mental retardation)," and other evidence suggested that Lee functioned in the normal range, such that it was reasonable for defense counsel to elect not to investigate this mitigating circumstance further.  (Doc. 26, at 65-66 & n.82.)  Petitioner now says it was manifest error for the May 30 Order to require Lee to affirmatively allege that he did suffer from any mental illness, to offer any diagnosis or report, or to identify mitigating information that his lawyer would have uncovered had he investigated this line of inquiry.  So, according to petitioner, his claim that his trial attorney rendered ineffective assistance by not developing mitigating evidence of a mental impairment should have been allowed to proceed -- even though, to this day, no mental health expert has ever diagnosed him with any such impairment -- based on nothing more than allegations of the tenor that he had huffed gasoline as a child, that he had been a substance abuser for years, that he had sustained an unspecified head injury in a January

_____

[12]      The Court's observations in this regard cannot have been manifestly erroneous because they hew closely to those of the Eleventh Circuit.  *See, e.g., Sochor v. Secretary Dep't of Corrections*, --- F.3d ----, 2012 WL 2401862, *15 (11th Cir. June 27, 2012) (where habeas petitioner argued ineffective assistance for failure to develop penalty-phase evidence of petitioner's long-term severe substance abuse, "[t]here is every reason to believe that this evidence would have hurt Sochor as much as it would have helped him.  As we have repeatedly recognized, evidence of drug and alcohol use is often a 'two-edged sword,' that provides an independent basis for moral judgment by the jury.") (citations omitted).

1995 car accident, and that he "seemed distant after the wreck." (Doc. 28, at 17.) Circuit precedent undermines Lee's position. *See Powell v. Allen*, 602 F.3d 1263, 1274-75 (11th Cir. 2010) (no *Strickland* prejudice where petitioner alleged that counsel was ineffective for failing to investigate head traumas, because petitioner "makes no allegations and presents no information pertaining to the significance of his head injuries on his subsequent behavior and how this would have changed the outcome of the penalty phase of his trial," and because petitioner "did not allege the existence of any testimony from a medical professional nor the existence of any medical records that addressed the relationship between his alleged head injuries and his subsequent behavior"); *Price v. Allen*, 679 F.3d 1315, 1325 (11th Cir. 2012) ("On *Strickland*'s prejudice prong, Price has offered no more than a conclusory assertion that a mental-health expert could have testified to a connection between the [circumstances alleged in the petition] and his subsequent actions.").[13]  There was no "manifest error" in the Court's determination that Lee has not satisfied *Strickland* with respect to any undiagnosed mental illness that petitioner conjectures or suspects he might have had.  *See Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) (no *Strickland* prejudice where petitioner faulted counsel for not putting on mental health evidence, where petitioner was in normal range of intelligence, had no history of psychological diagnosis or treatment, and examining experts could agree only that he suffered from alcoholism and chronic substance abuse).

---

[13]    Another way to think of it is as follows: "[T]o prove prejudice by failure to investigate and failure to produce a certain kind of expert witness, a habeas petitioner must demonstrate a reasonable likelihood that an ordinarily competent attorney conducting a reasonable investigation would have found an expert similar to the one eventually produced." *Horsley v. State of Alabama*, 45 F.3d 1486, 1495 (11th Cir. 1995).  To this day, Lee has never "produced" such an expert who would find that he was mentally impaired on the basis of the automobile accident, history of substance abuse, and so on.  Thus, petitioner decries his trial counsel for failing to do something (obtain a mental health expert) that petitioner has never done in this case despite many years of appellate and post-conviction proceedings.  And if, as petitioner now posits, it is the state courts' fault that he has not hired a mental health expert because they denied his motion for funds in Rule 32 proceedings, then how could it have been ineffective assistance for trial counsel to fail to obtain an expert witness under the same set of factual circumstances?  Stated differently, how is it ineffective assistance for trial counsel to fail to develop a line of evidence that habeas counsel (despite access to the same facts, circumstances, and arguments available to trial counsel at the time of trial) has been unable to develop in many years of representing Lee?

Before leaving the mental impairment issue, it is apparently Lee's position that this Court committed "manifest error" by not granting him an evidentiary hearing to allow him to conduct a fishing expedition to see if he can establish any kind of mental health diagnosis now, for the first time, more than a decade after the fact.  (Doc. 28, at 23-25.)  This is not an argument that he squarely presented to this Court in his § 2254 Petition briefing; therefore, it is improper for him to raise it now, for the first time, in a Rule 59(e) Motion.[14]  Even if the argument were properly presented at this time, the Supreme Court has held "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, --- U.S. ----, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).  The Alabama state courts' denial of Lee's ineffective-assistance mitigation claim was unquestionably "on the merits" under *Frazier v. Bouchard*, 661 F.3d 519 (11th Cir. 2011).  So in order to determine whether Lee can satisfy the statutory hurdle of showing that the state courts' adjudication on the merits "resulted in a decision that was contrary to, or involved, an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), *Pinholster* commands this Court to limit the record to that before the state court that provided the underlying merits ruling.  And Lee seeks an evidentiary hearing for the very purpose of satisfying § 2254(d)(1) (*i.e.*, to show that the state courts' ruling was contrary to clearly established federal law).  Under these circumstances, it was not "manifest error" for this Court to deny petitioner an evidentiary hearing to give him an opportunity to cast about for unknown, unidentified evidence that might (or might not) substantiate the threadbare theory espoused in his state and federal habeas petitions that he was prejudiced when trial counsel failed to develop hypothetical mitigation evidence of mental illness based on a head injury, a history of substance abuse, and the like, when neither testifying expert at trial found any

---

[14]     To be sure, in the reply brief in support of his § 2254 Petition, Lee requested an evidentiary hearing generically, but did not specifically tie that argument to his claims concerning mental health evidence.  (Doc. 25, at 10-14.)  For example, Lee now directs the Court to documents in the 22-volume state-court record showing that he filed a motion for funds for a mental health expert in his Rule 32 proceedings, which the state court denied for the stated reason that Lee had not proffered specific facts "that, if true, would raise a reasonable likelihood [that] any reputable mental health expert … would have testified favorably at the penalty phase of his trial or would testify favorably at an evidentiary hearing."  (Vol. 15, at 444, 447.)  If Lee felt that he was entitled to a hearing specifically on his mental-health claims, or that the Rule 32 court denied his federal constitutional rights by not granting his request for expert funds, he should have presented these specific arguments to this Court long before the Rule 59(e) Motion.

indication of mental illness and other witnesses testified that Lee was an average student and a good worker.[15]

Additionally, petitioner expresses dissatisfaction with the Court's treatment of his allegations of a violent home environment.  A few points of clarification are in order.  First, petitioner asserts that "the Court is … wrong to conclude that a family that is in many respects loving cannot also be marred by violence." (Doc. 28, at 19 n.22.)  The May 30 Order contains no such conclusion; rather, the Order merely pointed out the obvious tension between the two sets of characterizations of the facts, as it noted that trial counsel made a strategic choice of emphasizing petitioner's loving family in the penalty phase.  (Doc. 26, at 63 & n.79.)  Had trial

---

[15]       In his Motion to Reconsider, Lee argues that the very clear holding of *Pinholster* "that evidence later introduced in federal court is irrelevant to § 2254(d)(1) review," 131 S.Ct. at 1400, and that "[w]e are barred from considering the evidence Pinholster submitted in the District Court" in support of his § 2254(d)(1) showing, *id.* at 1411 n.20, does not mean what it says and that he is entitled to a hearing as long as he shows that he diligently attempted in state court to develop the facts on which he now requests a hearing.  Even if this facially implausible reading of *Pinholster* were accurate (and the Court does not see how it could be, given the clarity of the rule, and Justice Breyer's pointed observation in his concurrence that "[t]here is no role in (d) analysis for a habeas petitioner to introduce evidence that was not first presented to the state courts," *id.* at 1412, *see also Williams v. Thaler*, --- F.3d ----, 2012 WL 2308441, *5 (5th Cir. June 19, 2012) (*Pinholster* "holding precludes consideration of facts developed at a post-conviction federal district court evidentiary proceeding in the § 2254(d)(1) analysis")), Lee has done nothing more to establish diligence other than to say that he asked the state courts for funds and an evidentiary hearing and the state courts said no.  He does not show, for example, that he attempted to obtain medical records of the head injury, that he unsuccessfully sought to consult with mental health professionals despite a lack of funding, that the state courts denied him the opportunity to submit written expert reports or medical records (which evidence would not require a hearing at all), or the like.  Certainly, Lee does not come forward with any authority in his Rule 59(e) Motion establishing that it was "manifest error" for the Court to deny him an evidentiary hearing under these circumstances, or that he was constitutionally entitled to same.  And more generally, we do not even have allegations in this case explaining how alleged head injuries or mental illness affected Lee's actions at the time he committed the crime of conviction.  Diligence alone would not entitle Lee to an evidentiary hearing, given the inadequacy of those allegations.  *See Pope v. Secretary for Dep't of Corrections*, 680 F.3d 1271, 1291 (11th Cir. 2012) ("Once a petitioner has established diligence, a federal court may grant an evidentiary hearing without regard to the strictures of 28 U.S.C. § 2254(e)(2), but only if the petitioner has proffered evidence that, if true, would entitle him to relief.") (citations and internal marks omitted).  Lee does not get a full-blown hearing on his § 2254 Petition simply because he hopes that he might be able to develop brand-new evidence now (12 years after his conviction) showing that he was prejudiced by his trial counsel's failure to pursue a mental-illness theory of mitigation at the penalty phase.

counsel put on evidence that Lee's parents fought each other frequently, and that they would castigate, berate and sometimes whip Lee, such evidence would have undermined his very clear penalty-phase strategy "of having family members (including his parents) testify that they love and value [Lee]." (*Id.*) That choice was not constitutionally deficient performance under *Strickland. See, e.g., Stephens v. Secretary, Florida Dep't of Corrections*, 678 F.3d 1219 (11th Cir. 2012) (no deficient performance where counsel's strategy "was to omit all negative evidence about Stephens' childhood," including evidence that defendant suffered abuse at hands of his father, which evidence "was opposite to, and would have entirely undermined, counsel's strategy").[16] Second, while petitioner charges the May 30 Order with having a "dismissive approach to the beatings Mr. Lee suffered" (doc. 28, at 19), the fact remains the vast majority of the domestic problems chronicled in Lee's habeas petition involves physical abuse from one parent to the other, not abuse of Lee himself. That distinction matters in assessing whether petitioner was prejudiced by trial counsel's failure to present such evidence in mitigation.[17]

---

[16]     Defense counsel called Lee's father, Lewis Lee, as the first penalty-phase witness. (Vol. 4, R-21, at 419.) Lewis Lee testified that, *inter alia*, petitioner "was a good help" to him growing up, that Lewis Lee gave his "greatest sympathy to the victim's family," but that "I don't want my son to go to no death penalty. I'm the one, I'm the one that carried my son to jail. … [M]y son really need help. I figure he need help. That's what I figure he need, help." (*Id.* at 419-20.) Imagine how the jury would have construed a father's emotional plea to spare his son's life if defense counsel had done as petitioner now claims he was constitutionally required to do, by branding that father as a drunken monster who beat his wife and cursed his children. That's just the kind of reasonable strategic decision that *Strickland* allows. The same goes for petitioner's mother, Betty Jean Lee, who testified during the penalty phase that "I don't want to lose my child. I love him and I have sympathy and I'm sorry about what he did to the family. But he's my third son, my second son, and I don't want to lose him." (*Id.* at 429.) Imagine what would have become of the emotional impact of this mother's testimony had defense counsel put on evidence that this same mother berated and whipped that son. The Constitution does not require trial counsel to sabotage his own reasonable trial strategy, or to present evidence that works at cross-purposes to other evidence.

[17]     That is not to say that a home life in which one parent was abusive to the other is irrelevant for mitigation purposes, but is to say that such evidence is weaker than evidence that the petitioner himself was the subject of abuse. Petitioner identifies nothing manifestly erroneous about the May 30 Order's reasoning in this regard. Besides, the Eleventh Circuit has noted that a defense choice to present evidence of this kind at the penalty phase is "fraught with peril," because "additional mitigating evidence emphasizing physical abuse, neglect, and poverty has the potential to highlight that a petitioner's sibling grew up in the same environment and still emerged as a successfully employed, law-abiding citizen," such that "that evidence can pose as (Continued)

-18-

Again, the only facts alleged in the § 2254 Petition concerning abuse directed towards Lee himself were that his parents "would frequently verbally abuse and berate" him "and they sometimes would whip him." (Doc. 1, Ground VI, § 32.)[18]  The Court stands by the May 30 Order's conclusion that "the state court's determination that [Lee] failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was [not] contrary to or an unreasonable application of Supreme Court precedent." *Powell*, 602 F.3d at 1273; *see also Price*, 679 F.3d at 1325 (where petitioner alleged ineffective assistance based on trial counsel's failure to present evidence of childhood abuse and neglect, such allegations were "too general and conclusory to be able [to] say that there is a reasonable probability that this evidence would have changed the outcome of Price's sentencing," where he provides no specificity as to "nature or number" of incidents).

For all of these reasons -- as well as the fact that for all of the incompetencies attributed to him by petitioner, trial counsel convinced a majority of the jury to recommend a life sentence, rather than death -- the Court finds that petitioner's Rule 59(e) Motion is due to be **denied** without an evidentiary hearing insofar as it relates to petitioner's ineffective-assistance claim pertaining to penalty-phase mitigation.

C.    ***Assignments of Error Pertaining to Jury's Recommendation of Life.***

In denying petitioner's claims both on direct appeal and in Rule 32 proceedings, the Alabama Court of Criminal Appeals frequently relied on the jury's recommendation of life as establishing that petitioner had not been prejudiced by various of his claims.  *See, e.g., Lee v. State*, 898 So.2d 790, 830 (Ala.Crim.App. 2001) ("[T]he jury recommended a sentence of imprisonment for life without the possibility of parole.  Therefore, error, if any in the

---

much harm as good."  *Sochor*, 2012 WL 2401862, at *16 (citation and internal quotation marks omitted).

[18]    Petitioner rebukes the Court for observing that corporal punishment is a common practice in American homes, and states that "[i]t is, in fact, a crime."  (Doc. 28, at 19.)  Of course, Alabama law does not forbid parents from using reasonable and appropriate physical force on their children.  *See* Ala. Code § 13A-3-24(1).  And petitioner never alleges facts from which it could be determined that the physical force to which he was subjected by his parents as a child was either unreasonable or inappropriate.  Once again, petitioner travels in conclusory labels and unhelpful generalizations, rather than concrete facts.

prosecutor's actions during the penalty phase was harmless."); *id.* at 833 n.8 (as to alleged error in instructing veniremembers on their roles during the penalty phase, "the jury recommended a sentence of imprisonment for life without the possibility of parole. Therefore, error, if any, was harmless."); *id.* at 834-35 (as to alleged error in trial court's statements about the types of murder that are eligible for the death penalty, "the jury recommended a sentence of imprisonment for life without the possibility of parole. Therefore, error, if any, in the trial court's statements was harmless."); *Lee v. State*, 44 So.3d 1145, 1168 (Ala.Crim.App. 2009) (opining that "Lee could not have satisfied the requirements of *Strickland*" because any error in counsel's failure to object to certain jury instructions "based on the jury's recommendation, was harmless"); *id.* at 1171 (reaching same conclusion for same reason as to ineffective assistance claim predicated on trial counsel's failure to object to instances of prosecutorial misconduct).

In order to establish a right to habeas relief as to claims that were adjudicated on the merits in state court, Lee must show that such adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254. The state courts' determination that any error was harmless (or that *Strickland* prejudice was not satisfied on various of petitioner's claims) because the jury recommended life is duly supported by a series of Eleventh Circuit precedents that have said exactly the same thing. *See Parker v. Allen*, 565 F.3d 1258, 1275 (11th Cir. 2009) (in habeas review of Alabama capital case where trial court overrode jury recommendation of life without parole, declaring that "[a] petitioner cannot show sentencing phase prejudice when the jury recommends a sentence of life instead of death"); *Mills v. Singletary*, 161 F.3d 1273, 1286 (11th Cir. 1998) ("We additionally agree with the district court that even if Mills's lawyers' performance was deficient, Mills cannot demonstrate that the alleged failure to present mitigating evidence prejudiced him at the penalty phase because the jury recommended a life sentence."); *Routly v. Singletary*, 33 F.3d 1279, 1297 (11th Cir. 1994) ("Routly cannot show that any failure to present mitigating evidence to the jury prejudiced him to any degree whatsoever in the jury's consideration of penalty because the jury recommended a sentence of life imprisonment anyway.").

Lee has not come forward with a single authority from any jurisdiction that overrules, criticizes or directly calls into question the *Parker / Mills / Routly* line of precedents. To be sure, he is emphatic in opining that the Eleventh Circuit erred grievously in deciding them. But he

-20-

cannot argue this series of cases out of existence, nor can he will them to disappear for purposes of a "clearly established federal law" analysis.  In this respect, the May 30 Order was simple and direct:  "Surely the Alabama state court's ruling could not be an unreasonable application of clearly established federal law when the Eleventh Circuit Court of Appeals has construed the prejudice analysis … the same way the state court did here, in a penalty phase proceeding wherein the jury recommended life."  (Doc. 26, at 43 n.57.)  If, as petitioner insists, the Court's determination that the state court did not violate clearly established federal law in deeming certain alleged penalty-phase error harmless where the jury recommended life "is a misstatement of the law" (doc. 28, at 27), it is a misstatement of the law that the Eleventh Circuit has repeatedly indulged.  It is also one that has apparently never been called out by a single authority anywhere, at least not any authority that petitioner has cited.

This is obviously not the stuff of manifest error, and petitioner's Motion to Reconsider is **denied** insofar as it relates to his contention that the May 30 Order erred in not overturning the state courts' reasoning that no penalty-phase prejudice can be found where the jury recommends life instead of death.[19]

---

[19]    Two other points are appropriate before leaving this topic.  First, even if petitioner were correct that *Parker* and its ilk are contrary to clearly established law, he would not be entitled to reconsideration or habeas relief.  The May 30 Order did not deny a single one of his habeas claims exclusively on that basis, but instead used this point as an alternative / supplemental justification, an additional reason for deciding the particular issues the way it did.  Even if that reason were to evaporate, then, the others (which Lee by and large does not address in his Rule 59(e) Motion) would remain intact and the result would be unchanged.  Second, the Rule 59(e) Motion ascribes inconsistency to the May 30 Order where none exists.  (Doc. 28, at 27 n.29.)  On page 67, the May 30 Order observed (in the context of Lee's ineffective assistance claims concerning the penalty phase) that "the fact that Lee's counsel successfully convinced the jury to recommend life, rather than death, is compelling evidence that counsel was in fact effective."  (Doc. 26, at 67.)  That is a correct statement of law.  *See Tarver v. Hopper*, 169 F.3d 710, 715 (11th Cir. 1999) ("Tarver's lawyer's effectiveness at the sentencing stage is strongly evidenced by the jury's decision to recommend not death, but life without parole.").  Yet petitioner blasts this statement as conflicting with the Court's adherence to *Parker* elsewhere in the May 30 Order.  There is no conflict.  *Tarver* (and page 67 of the May 30 Order) addresses whether there was deficient performance.  The *Parker* decision (and the other cites in the May 30 Order) addresses prejudice.  *Tarver* is not in tension with *Parker*, and the May 30 Order is not internally inconsistent in this manner.

**D.      Assignment of Error Pertaining to Admission of Defendant's Guilt.**

Petitioner also brands as "manifest error" the May 30 Order's treatment of his ineffective assistance claim directed concerning trial counsel's concession during closing arguments of the guilt phase that "we all know what the truth is, Jeffery Lee murdered Mr. Ellis and Mrs. Thompson." (Vol. 4, R-13 at 362.)  Petitioner alleged that trial counsel made this statement without his consent, and without even consulting him about it, and that prejudice should be presumed.  The Rule 32 appellate court rejected this claim, explaining that "this case is governed by *Florida v. Nixon*; thus, there was no presumption of prejudice when counsel conceded Lee's guilt.  In light of the overwhelming evidence presented against Lee, counsel's strategy was not unreasonable." *Lee*, 44 So.3d at 1170.

The May 30 Order concluded that the state appellate court's application of the Supreme Court's *Nixon* decision to this case to find no *Cronic* presumption of prejudice was not contrary to clearly established federal law.  Central to this Court's finding in that regard was that the Eleventh Circuit had recently applied *Nixon* in a case called *Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228 (11th Cir. 2011), in which the state courts had done precisely the same thing that the state courts did in Lee's case.  (Doc. 26, at 100-01.)  The relevant facts in *Harvey* were on all fours with Lee's allegations.  As in Lee's case, Harvey's lawyer stood up in his opening statement and said, "Harold Lee Harvey is guilty of murder.  If anything is established over the next week, it will be that Harold Lee Harvey is guilty of murder." 629 F.3d at 1247.  As Lee now does, Harvey alleged that "he never consented to [his lawyer]'s first-degree murder concession," and that *Nixon* "does not apply because [his lawyer] never consulted with him regarding a first-degree murder concession." *Id.* at 1250-51.  As the Alabama appellate courts did here, the Florida Supreme Court disagreed with Harvey, finding that *Nixon* did govern and that the *Cronic* presumed-prejudice standard was inapplicable.  On habeas review, the Eleventh Circuit examined Harvey's argument closely, and concluded that "the Florida Supreme Court's refusal to determine *Strickland* prejudice under *Cronic*'s presumed prejudice standard did not constitute a decision that was contrary to, or involved an unreasonable application of, clearly established federal law." *Id.* at 1252 (citation and internal quotation marks omitted).  The May 30 Order applied and followed *Harvey*.

In his Rule 59(e) Motion, petitioner argues his *Nixon* interpretation at great length.  This is the very same interpretation that the Eleventh Circuit deemed in *Harvey* to be insufficient to

establish that the state court's ruling was contrary to or an unreasonable application of clearly established federal law.  Remarkably, petitioner's Rule 59(e) Motion does not even acknowledge the existence of *Harvey*, much less challenge its reasoning or conclusion.  This Court does not have the luxury of blithely pretending that on-point binding precedents do not exist simply because they may be inconvenient.  Thus, the May 30 Order did not manifestly err by finding that *Harvey*'s reasoning applies equally here to foreclose petitioner from habeas relief as to the Alabama courts' determination that no presumption of prejudice attaches to his counsel's concession of his guilt of murder without his consent or consultation.

       *E.*     *Assignment of Error Pertaining to Lee's Right to Testify at Penalty Phase.*

       In his Amended Rule 32 Petition, Lee alleged that trial counsel rendered ineffective assistance by failing to "consult with Petitioner to determine whether Petitioner wanted to testify at the judicial sentencing hearing."  (Vol. 14, R-63 at 77.)[20]  The Amended Rule 32 Petition does

---

[20]      Lee's Amended Rule 32 Petition leaves no doubt that this ground for relief relates only to <u>sentencing</u>.  The ground for relief bears a header reading, "Trial Counsel Was Ineffective for Failing to Ask Petitioner Whether He Wanted to Testify at Sentencing."  (*Id.*)  And the Petition goes on to state that "the sentencing hearing is one of the most critical stages of the prosecution," that trial counsel "made the decision for Petitioner that Petitioner would not testify at the sentencing hearing," that counsel deprived petitioner of "the one and only opportunity that he would therefore have to address the court and the victims," and that counsel neglected to advise petitioner "that he would have the opportunity to speak at the sentencing hearing at all."  (*Id.* at 77-78.)  This is interesting – and important – because the Amended Rule 32 Petition did <u>not</u> allege ineffective assistance relating to petitioner's failure to testify at the penalty phase.  Lee simply never presented that aspect of his claim to the state courts on Rule 32 review.  And the trial court's Rule 32 order denying the claim properly framed it as alleging "that Lee's trial counsels were ineffective for not asking Lee if he wanted to testify at the judicial sentencing."  (Vol. 22, R-79, at 98.)  The trial court did not address petitioner's failure to testify during the penalty phase because Lee never raised that issue in the Amended Rule 32 Petition.  (The appellate court's reference to "penalty phase" rather than "sentencing hearing," 44 So.3d at 1170, is a typographical error; certainly, the appeals court never said that it intended to extend or transform the claim into something that Lee never alleged and the Rule 32 trial court never considered.)  Yet in asserting this same ground for relief in his § 2254 Petition, Lee slipped in references to the penalty phase, where he had previously mentioned only the sentencing hearing.  (Doc. 1, Ground VI, at ¶¶ 247, 249.)  Having never presented a claim to the state courts that trial counsel was ineffective for failure to consult with Lee about whether he wished to testify during the penalty phase, that claim is unexhausted and cannot be heard in his § 2254 Petition.  *See Powell*, 602 F.3d at 1269 ("the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review") (citation and internal marks omitted).  Thus, Lee's present claim that trial counsel was ineffective for failing (Continued)

not allege that Lee would have testified at the sentencing hearing, had his lawyer notified him that it was his choice to do so, nor does it provide any inkling (much less affirmative representations) as to the sort of testimony he would have imparted had his attorney advised him of his right to testify and had he chosen to testify.  Indeed, the Amended Rule 32 Petition is entirely silent on these matters, but instead invokes *Cronic* in apparently suggesting that prejudice should be presumed.  (*Id.* at ¶¶ 388-94.)

In denying this claim, the Rule 32 trial court opined that it was not sufficiently pled because Lee "fails to proffer … what testimony his trial counsels should have elicited from him at the judicial sentencing that would have been so compelling it could have caused this Court not to override the jury's recommendation." (Vol. 22, R-79, at ¶¶ 203-04.)  On appeal, the Alabama Court of Criminal Appeals quoted this reasoning verbatim, then added, "[w]e agree with the circuit court that Lee failed to meet his burden of pleading in regard to this claim.  Lee failed to not only plead sufficient facts, but also failed to plead prejudice." *Lee*, 44 So.3d at 1170.

On federal habeas review, this Court's responsibility as to this claim is to examine "whether the state court's determination that [Lee] failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent." *Powell*, 602 F.3d at 1273.  The May 30 Order answered this question in the negative.  As both the Alabama trial and appellate courts observed, Lee's Rule 32 petition failed to plead any facts going to the issue of prejudice.  And federal law requires Lee in such a claim to satisfy *Strickland* prejudice, without any kind of presumption or finding of *per se* prejudice. *See, e.g., Morris v. Secretary, Dep't of Corrections*, 677 F.3d 1117 (11th Cir. 2012) (analyzing claim that trial counsel failed to advise defendant of right to testify under a *Strickland* prejudice standard, with no presumptions); *United States v. Smith*, 2011 WL 2693201, *3-4 (11th Cir. July 12, 2011) (rejecting defendant's argument that abridgment or denial of right to testify constitutes "a structural error in the trial because it is not amenable to analysis under the prejudice and fundamental fairness prongs"); *Franklin v. United States*, 2007 WL 1600028, *4 (11th Cir. June 5, 2007) ("Franklin makes a number of arguments on appeal,

---

to consult with him about his right to testify at the penalty phase (as opposed to the sentencing hearing) is denied for the additional reason of failure to satisfy the exhaustion requirement.

including that the question is not whether his testimony would have altered the final outcome, rather it is whether he was denied the right to testify.  Franklin, however, must establish deficient performance and prejudice to obtain relief in this § 2255 motion."); *Lambrix v. Singletary*, 72 F.3d 1500, 1508 (11th Cir. 1996) ("a defense attorney renders ineffective assistance if he fails to adequately inform his client of the right to testify, and that failure prejudices the defense").

The May 30 Order concluded that the Alabama courts' determination that Lee had failed to plead sufficient facts to show prejudice as to his ineffective-assistance claim concerning his right to testify was not objectively unreasonable.  (Doc. 26, at 69.)  This was the correct legal standard.  *See Williams v. Allen*, 598 F.3d 778, 789 (11th Cir. 2010) (habeas petitioner "not only has to satisfy the elements of the *Strickland* standard, but he must also show that the State court applied *Strickland* to the facts of his case in an *objectively unreasonable manner*") (citations and internal quotation marks omitted).  The May 30 Order's determination in this regard was not manifestly erroneous.  Again, the Rule 32 petition did not make even the slightest attempt to allege prejudice as to this claim, much less come forward with any specific allegations showing that the defense was prejudiced in any respect by trial counsel's failure to consult with Lee about his right to testify at the sentencing hearing.  The state courts were not required to "fill in the blanks" for Lee, to speculate that he would have chosen to testify, to speculate or extrapolate from other portions of his Rule 32 Petition what topics that testimony might have covered, or otherwise to do the petitioner's work for him in developing his claim.  Petitioner has come forward with no clearly established federal law that would have imposed such an obligation, but instead cavalierly asserts that "the Court committed a manifest error of law and fact that will not withstand appellate review."  (Doc. 28, at 40.)[21]  While it is not the undersigned's place to decide whether it will or will not "withstand appellate review," the Court has little difficulty concluding that it does withstand Rule 59(e) review.

---

[21]      Petitioner's contorted argument is that this Court (and presumably the Rule 32 courts too) were "obligated to consider what was offered in mitigation on behalf of Mr. Lee … versus what Mr. Lee would have offered as alleged in his petition."  (Doc. 28, at 40.)  Petitioner identifies no clearly established federal law standing for this proposition.  More importantly, he misses the point.  "[W]hat Mr. Lee would have offered as alleged in his petition" was nothing, because his Rule 32 petition was completely silent as to "what Mr. Lee would have offered" had he been aware of his right to testify, or even whether he would have offered anything at all.

**F.      Assignments of Error Pertaining to Confrontation Clause Claim.**

Finally, petitioner would have the Court find "two manifest errors" in the May 30 Order's treatment of his Confrontation Clause claim, which concerned Dr. Ronan's "brief reference to a statement the appellant made to a psychiatrist who saw him while he was in jail." *Lee*, 898 So.2d at 811.  Neither contention establishes a right to Rule 59(e) relief.

The first assignment of error as to this claim is petitioner's insistence that the May 30 Order "reframed Mr. Lee's claim to something he did not argue." (Doc. 28, at 41.)  According to petitioner, the May 30 Order turned petitioner's claim (which concerned whether Dr. Ronan could testify about the out-of-court statement from the unidentified psychiatrist) into a different claim (whether Dr. Ronan was allowed to consider that statement).  With all respect, it is petitioner who is doing the reframing of the May 30 Order, which expressed a entirely accurate understanding of the nature of Lee's claim.  Indeed, the May 30 Order concluded that "[t]he state courts' resolution of this issue could not have been contrary to clearly established law, because it is not clearly established in the federal courts that the Confrontation Clause is violated *whenever an expert identifies inadmissible evidence as being part of the basis for his or her independent judgment*." Doc. 26, at 45 (emphasis added).  The claim that the May 30 Order addressed was precisely the claim that he presented.[22]

---

[22]      In arguing otherwise, Lee seizes on the phrase in the May 30 Order that "[i]t is not at all clear that a prosecution expert is forbidden under the Confrontation Clause from relying on a non-testifying expert's written observations in forming her opinion," to which she testifies at trial. (Doc. 26, at 44-45.)  But "relying on" is ambiguous, and could mean either "referring in her testimony to" or "considering but never testifying about."  The Court intended the first meaning, not the second.  Incidentally, the § 2254 Petition was not immune from just the ambiguity for which petitioner now lambasts the May 30 Order.  (Doc. 1, Ground 3, ¶ 1 (decrying "Dr. Ronan's *reliance on a statement from a witness who was never cross-examined*") (emphasis added)); ¶ 4 ("Dr. Ronan's *reliance on the hearsay testimony of an unknown psychiatrist* … violated Mr. Lee's Sixth Amendment right, guaranteed by the Confrontation Clause, to confront and cross-examine witnesses against him.") (emphasis added).  Moreover, the cases cited in the May 30 Order concern whether an expert may testify about the bases of his or her opinion, not whether he or she is constitutionally allowed to base his or her opinion on facts that are never shared with the jury. *See, e.g., United States v. Steed*, 548 F.3d 961, 975 (11th Cir. 2008) (defendant objected to expert's testimony containing "general references to conversations that he had with other law enforcement officers over the course of his career" and other inadmissible evidence on which he relied in forming his opinion, on the ground that such testimony "acted as a conduit for inadmissible hearsay").  And for all of petitioner's accusations that the May 30 Order failed to apply *Crawford*, that decision does not foreclose
(Continued)

Second, petitioner assigns "manifest error" to the legal standard the Court applied in performing a "harmless error" analysis of his Confrontation Clause claim.  Binding precedent is clear as a bell that the proper legal standard for this kind of claim is exactly the one the May 30 Order applied.  *See Grossman v. McDonough*, 466 F.3d 1325, 1339 (11th Cir. 2006) ("in a habeas corpus proceeding under 28 U.S.C. § 2254, we analyze Grossman's claim under a different harmless error standard of review: whether the Confrontation Clause error alleged in this case had substantial and injurious effect or influence in determining the jury's verdict") (citation and internal quotation marks omitted); *see also Packer v Jones*, 2010 WL 7367820, *11 (S.D. Ala. Mar. 12, 2010); 3B Charles Allen Wright, et al., *Federal Practice & Procedure Crim.* § 855 n. 50 (3d ed.) ("The *Brecht* standard governs harmless error analysis in habeas corpus cases involving Confrontation Clause violations ….").  Petitioner insists that the Supreme Court rejected this principle in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).  But *Van Arsdall* was a direct appeal case, not a habeas case.  *Grossman* draws a very clear distinction between the harmless-error standard for Confrontation Clauses on direct appeal, versus those on § 2254 review.  Petitioner cites no authority whatsoever that would support a conclusion that it was "manifestly erroneous" for the May 30 Order to follow *Grossman*.  Petitioner's Rule 59(e) Motion is **denied** as to the Confrontation Clause claim.[23]

---

experts from ever mentioning testimonial hearsay on which they relied in forming their opinions. *See United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009) (post-*Crawford*, "an expert's use of testimonial hearsay is a matter of degree," and "there will typically be no *Crawford* problem" if the expert testifies to the statement as a means of giving an independent judgment, rather than merely acting as a transmitter for testimonial hearsay).  Here, Dr. Ronan used that testimonial hearsay in giving her independent judgment, rather than merely being a transmitter of what somebody else said.  She did not parrot what the unidentified psychiatrist told her (or even offer any specifics about what the unidentified psychiatrist said), but merely noted that it – whatever it was – was different from what petitioner told Dr. Ronan, nor did she simply pass off the unidentified psychiatrist's opinions as her own.  The May 30 Order's statement that "it is not clearly established in the federal courts that the Confrontation Clause is violated whenever an expert identifies inadmissible evidence as being part of the basis for his or her independent judgment" (doc. 26, at 45) was not manifestly erroneous.

[23]     Remarkably, in addressing this claim, petitioner argues that "the Court's reliance on circuit court cases in rejecting Mr. Lee's claim constitutes a manifest error of law."  (Doc. 28, at 42 n.33.)  So, according to petitioner, it is not only error but manifest error for a federal district court in the Southern District of Alabama to look to Eleventh Circuit precedents in adjudicating a (Continued)

IV.     **Conclusion.**

For all of the foregoing reasons, the Motion to Reconsider, Alter or Amend the Court's Judgment and Grant an Evidentiary Hearing (doc. 28) is **denied** in its entirety.

DONE and ORDERED this 1st day of August, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

§ 2254 petition.  That would, no doubt, be news to the Eleventh Circuit, which devotes substantial resources to crafting published opinions in habeas cases to give guidance to the lower courts.  More importantly, this argument reflects a fundamental misunderstanding about how § 2254 review works.  Of course, AEDPA forbids a court from granting federal habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  So this Court could not, for example, grant habeas relief to Lee based on a determination that Alabama state courts rendered a decision contrary to an Eleventh Circuit precedent on an issue as to which the Supreme Court had never weighed in.  But the same does not apply to denial of a § 2254 petition.  Indeed, the Court is aware of no authority, and Lee cites none, that forbids a district court from looking to circuit precedents (or excuses a district court from following them) in finding no clearly established federal law as a legal basis for denying a § 2254 petition.  Nor is a habeas court barred from obtaining guidance from appellate decisions concerning what the Supreme Court meant (*i.e.*, to apply *Crawford* here) as to a particular point.  Perhaps petitioner can convince the Eleventh Circuit Court of Appeals that this Court was forbidden from consulting appellate interpretations of Supreme Court decisions in determining whether the Supreme Court has or has not "clearly established" certain principles.  Unless and until then, however, the Court is satisfied that there was no manifest error.